1  David E. Bower (SBN 119546)

2  **MONTEVERDE & ASSOCIATES PC**
   600 Corporate Pointe, Suite 1170

3  Culver City, CA 90230
   Tel: (213) 446-6652

4  Fax: (212) 202-7880

5  *Counsel for Plaintiff*

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10  JERRY SANCHEZ, Individually and on     Civil Action No. 5:17-cv-6441
    Behalf of All Others Similarly Situated,

11                                         **CLASS ACTION COMPLAINT**
                  Plaintiff,
12                                         **DEMAND FOR JURY TRIAL**

13        v.
                                           1.  **VIOLATIONS OF THE**
14  IXYS CORPORATION, NATHAN                   **SECURITIES EXCHANGE ACT OF**
    ZOMMER, UZI SASSON, DONALD L.              **1934**
15  FEUCHT, SAMUEL KORY, S. JOON LEE,
    TIMOTHY A. RICHARDSON, JAMES M.
16  THORBURN, and KENNETH D. WONG,

17                Defendants.

18

19

20

21        Jerry Sanchez ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge

22  with respect to himself, and upon information and belief based upon, *inter alia*, the investigation

23  of counsel as to all other allegations herein, as follows:

24

25

26

27

28

## NATURE OF THE ACTION

1.     This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of IXYS Corporation ("IXYS" or the "Company") against IXYS and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with IXYS, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between IXYS and Littelfuse, Inc., through its subsidiary Iron Merger Co. (collectively "Littelfuse").

2.     On August 25, 2017, IXYS, entered into a definitive agreement and plan of merger (the "Merger Agreement") with the Littelfuse, pursuant to which each IXYS stock holder stands to receive either (i) $23.00 in cash (subject to applicable withholding tax), without interest (referred to as the cash consideration), or (ii) 0.1265 of a share of common stock, par value $0.01 per share, of Littelfuse (referred to as the stock consideration and together with the cash consideration, the merger consideration) (the "Merger Consideration").

3.     On October 26, 2017, in order to convince IXYS stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading proxy statement/prospectus on Form S-4 (the "Proxy") with the SEC.

4.     While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose material information that is necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. In particular, the Proxy contains materially incomplete and misleading information concerning the valuation analyses performed by the Company's financial advisor, Needham & Company, LLC ("Needham"), in support of its fairness opinion.

5.     The special meeting of IXYS stockholders to vote on the Proposed Merger is forthcoming. It is imperative that the material information that has been omitted from the Proxy is

CLASS ACTION COMPLAINT

disclosed to the Company's stockholders prior to the stockholder vote, so that they can properly exercise their corporate suffrage rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9. Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to IXYS stockholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) IXYS maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

CLASS ACTION COMPLAINT

**PARTIES**

10.     Plaintiff is, and at all relevant times has been, a stockholder of IXYS.

11.     Defendant IXYS is a Delaware corporation and maintains its headquarters at 1590 Buckeye Drive, Milpitas, California 95035. The Company develops technology-driven products to improve energy conversion efficiency, generate clean energy, advance automation and provide solutions for the transportation, medical and telecommunication industries since its founding in Silicon Valley. IXYS's common stock trades on the NASDAQ under the ticker symbol "IXYS".

12.     Individual Defendant Nathan Zommer is a director of IXYS and is the Chairman of the Board, Chief Executive Officer, and Chief Technology Officer of the Company.

13.     Individual Defendant Uzi Sasson is a director of IXYS and is the President, Chief Executive Officer, and Chief Financial Officer of the Company.

14.     Individual Defendant Donald L. Feucht is, and has been at all relevant times, a director of the Company.

15.     Individual Defendant Samuel Kory is, and has been at all relevant times, a director of the Company.

16.     Individual Defendant S. Joon Lee is, and has been at all relevant times, a director of the Company.

17.     Individual Defendant Timothy A. Richardsonis, and has been at all relevant times, a director of the Company.

18.     Individual Defendant James M. Thorburn is, and has been at all relevant times, a director of the Company.

19.     Individual Defendant Kenneth D. Wong is, and has been at all relevant times, a director of the Company.

20.     The defendants identified in paragraphs 11-19 are collectively referred to as the "Defendants".

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of IXYS (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of October 16, 2017, there were approximately 32 million shares of IXYS common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public stockholders of IXYS will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy, in violation of Sections 14(a) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

CLASS ACTION COMPLAINT

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.      A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.      Background and the Proposed Merger**

23.      IXYS is a multi-market integrated semiconductor company. The Company is engaged in the development, manufacture, and marketing of power semiconductors, mixed-signal integrated circuits (ICs), application specific integrated circuits (ASICs), microcontrollers, systems, and radio frequency (RF) power semiconductors. Its power semiconductors are sold separately and are also packaged in high power modules that consist of multiple semiconductor dies. Its power metal-oxide-silicon (MOS) transistors operate at greater switching speeds than bipolar transistors. Its ICs address the demand for analog, mixed-signal, and digital interface solutions in communication and other industries and include microcontrollers and mixed-signal application-specific ICs. RF power devices switch electricity at the high rates necessary to enable the amplification or reception of radio frequencies. It manufactures and sells laser diode drivers, high voltage pulse generators and modulators.

24.      Littlefuse is a supplier of circuit protection products for the electronics, automotive, and industrial markets. The Company operates through three segments. The Electronics segment

CLASS ACTION COMPLAINT

provides circuit protection components for overcurrent and overvoltage protection, as well as sensor components and modules to manufacturers of a range of electronic products. The Automotive segment provides circuit protection and sensor products to the worldwide automotive original equipment manufacturers (OEM) and parts distributors of passenger automobiles, trucks, buses, and off-road equipment. The Industrial Segment provides circuit protection products for industrial and commercial customers. The Company also offers electronic reed switches and sensors, automotive sensors for comfort and safety systems, and a range of electromechanical and electronic switch and control devices for commercial and specialty vehicles.

25.    On August 28, 2017, IXYS and Littlefuse issued a joint press release announcing the Proposed Merger. The press release stated in relevant part:

> CHICAGO, IL AND MILPITAS, CA, August 28, 2017 – Littelfuse, Inc. (NASDAQ:LFUS) and IXYS Corporation (NASDAQ:IXYS) today announced that they have entered into a definitive agreement under which Littelfuse will acquire all of the outstanding shares of IXYS in a cash and stock transaction. The transaction represents an equity value of approximately $750 million and enterprise value of $655 million. (1) Under the terms of the agreement, each IXYS stockholder will be entitled to elect to receive, per IXYS share, either $23.00 in cash or 0.1265 of a share of Littelfuse common stock, subject to proration. In total, 50% of IXYS stock will be converted into the cash election option and 50% into the stock election option.
>
> IXYS is a global pioneer in the power semiconductor and integrated circuit markets with a focus on medium to high voltage power control semiconductors across the industrial, communications, consumer and medical markets. IXYS has a broad customer base, serving more than 3,500 customers through its direct salesforce and global distribution partners. IXYS reported revenues of $322 million in its fiscal 2017 with an adjusted EBITDA margin of approximately 13.5%.
>
> The combined company is expected to have annual revenues of approximately $1.5 billion, with the following compelling strategic and financial benefits:
>
> •    Broader technology platform and capability to expand growth into industrial and electronics markets

7

- • Increased long-term penetration of power control portfolio in automotive markets, expanding global content per vehicle

- • Heightened engineering expertise and intellectual property around high voltage and silicon carbide semiconductor technologies

- • Increased presence in the semiconductor industry, adding to our scale and volume

- • Strong relationships and complementary overlap in major global electronics distribution partnerships enabling cross-selling

- • Immediately accretive to adjusted EPS and free cash flow post transaction close (2)

- • Expect to generate more than $30 million in annualized cost savings; additional future value created from revenue synergies and tax rate reduction

"As the largest acquisition in our 90-year history, this is an exciting milestone for Littelfuse," said Dave Heinzmann, President and Chief Executive Officer, Littelfuse. "IXYS' extensive power semiconductor portfolio and technology expertise fit squarely within our strategy to accelerate our growth within power control and industrial OEM markets. The combination of Littelfuse and IXYS unites complementary capabilities, cultures and relationships."

"IXYS will operate as the cornerstone of the combined companies' power semiconductor business," said Dr. Nathan Zommer, Chairman and Chief Executive Officer of IXYS. "Both Littelfuse and IXYS have long histories of innovation and customer-focused product development, and together, we will embrace the entrepreneurial spirit that has contributed to IXYS' success in the power semiconductor and integrated circuits market."

"The combination of IXYS and Littelfuse creates a stronger player in the power semiconductor industry, with the ability to leverage our collective resources and portfolio to create increased value for our customers," added Uzi Sasson, President and Chief Executive Officer of IXYS. "We believe that being a part of a world-class organization like Littelfuse will provide a bright future for IXYS and the talented people at our respective companies."

Transaction Highlights

8

CLASS ACTION COMPLAINT

The transaction is expected to be immediately accretive to Littelfuse's adjusted earnings per share and free cash flow in the first full year post transaction close, excluding any acquisition and integration related costs. Littelfuse expects to achieve more than $30 million of annualized cost savings within the first two years after closing the transaction. Longer term, the combination is also expected to create significant revenue synergy opportunities given the companies' complementary offerings, as well as benefits from future tax rate reduction.

In conjunction with the definitive agreement, Dr. Nathan Zommer, IXYS founder and currently the company's largest stockholder with approximately 21% ownership, has entered into a voting and support agreement. Subject to the agreement's terms and conditions, he has agreed to vote his shares in favor of the transaction. After close of the transaction, Dr. Zommer is expected to join Littelfuse's Board of Directors, subject to the board's governance and approval process. His technical skills and extensive experience across the semiconductor industry will benefit the combined company with its integration efforts, innovation roadmap and revenue expansion.

The transaction is expected to close in the first calendar quarter of 2018 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by IXYS stockholders. Littelfuse expects to finance the cash portion of the transaction consideration through a combination of existing cash and additional debt.

## II.     The Merger Consideration Fails to Fairly Compensate IXYS Shareholders

26.     The Merger Consideration is inadequate given IXYS' recent financial performance and strong growth prospects.

CLASS ACTION COMPLAINT

27.     In the year leading up to the announcement of the Proposed Merger, IXYS' stock price increased nearly 40% going from $11.53 on August 25, 2016 to $15.95 on Augst 25, 2017, as illustrated by the chart below:



28.     On June 2, 2017, the Company announced positive financial results for the quarter and year. Net revenues were $322.1 million, an increase of $4.9 million, or 1.5%, as compared to $317.2 million in the prior fiscal year. Gross profit for the twelve months ended March 31, 2017 was $105.6 million, or 32.8% of net revenues, as compared to gross profit of $99.8 million, or 31.4% of net revenues, for the prior fiscal year. Net income was $21.3 million, an increase of $6.6 million, or 44.8%, as compared to the prior fiscal year. Adjusted EBITDA, which excludes the impact of charges for the amortization and impairment of acquired intangible assets and stock compensation, was $46.9 million for the fiscal year ended March 31, 2017. CEO and CFO Sasson announced:

> Efforts to increase gross margins are bearing fruit as evidenced by three consecutive quarters of growth in margins. Higher net revenues reflect strengthening demand for our products. In particular, our power product sales have been boosted by demand in the industrial market. Our backlog looks healthy for the coming quarters. We are pleased with IXYS' financial metrics for the March 2017 quarter and will work diligently to continue this positive trend in the quarters ahead. Much will be dependent on global market growth and the resumption of customer buying trends. Therefore,

CLASS ACTION COMPLAINT

1    we expect revenues in the June 2017 quarter to increase 2-3% from
     the March 2017 quarter.

2  Zommer added:

3          We implemented strategic directives that mirrored global market
           dynamics, whi ch resulted in improved product focus, an increased
4          rate of investment and better financial results. We have 2 taken
           actions in recent years to strengthen IXYS financially, bolstering our
5          cash position for opportunistic, organic and acquisitive growth. We
           have also concentrated on efforts to increase our stockholders
6          equity.

7          29.    In sum, the Merger Consideration appears to inadequately value IXYS.  Given the

8  Company's strong financial results and growth potential, it appears that the Merger Consideration

9  is not fair compensation for IXYS shareholders. It is therefore imperative that the Company's

10 shareholders receive the material information (discussed in detail below) that Defendants have

11 omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate

12 suffrage rights and make an informed decision concerning whether to vote in favor of the Proposed

13 Merger.

14 **III.    The Merger Agreement's Deal Protection Provisions Deter Superior Offers**

15         30.    The Individual Defendants agreed to certain deal protection provisions in the

16 Merger Agreement that operate conjunctively to deter other suitors from submitting a superior

17 offer for IXYS.

18         31.    First, the Merger Agreement contains a no solicitation provision that prohibits the

19 Company or the Individual Defendants from taking any affirmative action to obtain a better deal

20 for IXYS stockholders. The Merger Agreement states that the Company and the Individual

21 Defendants shall not, directly or indirectly:

22         (i) solicit, initiate, knowingly encourage or knowingly facilitate any
           inquiry regarding, or any proposal or offer that constitutes, or would
23         reasonably be expected to lead to, a company takeover proposal (as
           defined below); (ii) engage in, continue or otherwise participate in
24         any discussions or negotiations, or furnish to any other person any
           information, in connection with any company takeover proposal; or
25         (iii) approve, adopt, recommend or enter into (or propose to do any
           of the foregoing) any letter of intent or similar agreement with
26         respect to a company takeover proposal.

27

28

CLASS ACTION COMPLAINT

32.     Additionally, the Merger Agreement grants the Littlefuse recurring and unlimited matching rights, which provides the Littlefuse with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) four business days to negotiate with IXYS, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.

33.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that the Littlefuse can easily foreclose a competing bid.  As a result, these provisions unreasonably favor the Littlefuse, to the detriment of IXYS's public stockholders.

34.     Moreover, the Merger Agreement provides that IXYS must pay the Littlefuse a termination fee of $28.5 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide IXYS stockholders with a superior offer.

35.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

36.     Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that IXYS's stockholders receive all material information necessary for them to cast a fully informed vote at the stockholder meeting concerning the Proposed Merger.

**IV.     The Proxy Is Materially Incomplete and Misleading.**

37.     On October 26, 2017, Defendants filed the Proxy with the SEC.  The Proxy has been disseminated to the Company's stockholders, and solicits the Company's stockholders to vote

CLASS ACTION COMPLAINT

1    their shares in favor of the Proposed Merger. The Individual Defendants were obligated to

2    carefully review the Proxy to ensure that it did not contain any material misrepresentations or

3    omissions. However, the Proxy misrepresents and/or omits material information, in violation of

4    Sections 14(a) and 20(a) of the Exchange Act, that is necessary for the Company's stockholders

5    to make an informed decision concerning whether to vote in favor of the Proposed Merger.

6         38.    With respect to Needham's *Discounted Cash Flow Analysis* ("DCF"), the Proxy

7    fails to disclose the following key components used in the analysis: (i) the inputs and assumptions

8    underlying the calculation of the discount rate range of 11.5% to 13.5%; (ii) the inputs and

9    assumptions underlying the selection of the terminal multiple range of 7.0x to 10.0x; (iii) the actual

10   terminal enterprise values calculated and utilized in the analysis; (iv) the value of IXYS' cash and

11   debt utilized in the analysis; (v) the estimated fully-diluted outstanding share number used in the

12   analysis; and (vi) why Needham performed a DCF using on three years of cash flows instead of

13   the normal, five years.

14        39.    These key inputs are material to IXYS stockholders, and their omission renders the

15   summary of Needham's Analysis incomplete and misleading.  As a highly-respected professor

16   explained in one of the most thorough law review articles regarding the fundamental flaws with

17   the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow

18   analysis a banker takes management's forecasts, and then makes several key choices "each of

19   which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55

20   Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the

21   terminal value…" *Id*.  As Professor Davidoff explains:

22          There is substantial leeway to determine each of these, and any
            change can markedly affect the discounted cash flow value. For
23          example, a change in the discount rate by one percent on a stream of
            cash flows in the billions of dollars can change the discounted cash
24          flow value by tens if not hundreds of millions of dollars….This issue
            arises not only with a discounted cash flow analysis, but with each
25          of the other valuation techniques. This dazzling variability makes it
            difficult to rely, compare, or analyze the valuations underlying a
26          fairness opinion *unless full disclosure is made of the various inputs
27          in the valuation process, the weight assigned for each, and the*

28

1

2

3

> *rationale underlying these choices*. The substantial discretion and
> lack of guidelines and standards also makes the process vulnerable
> to manipulation to arrive at the "right" answer for fairness. This
> raises a further dilemma in light of the conflicted nature of the
> investment banks who often provide these opinions.

4    *Id.* at 1577-78.

5    40.    With respect to Needham's *Present Value of Illustrative Future Stock Prices*

6    *Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the calculations of

7    the cost of equity range of 13.1% to 15.1%; (ii) the inputs and assumptions underlying the selection

8    of the illustrative multiples range of 7.0x to 10.0x; (iii) the value of IXYS' cash and debt utilized

9    in the analysis; and (iv) the estimated fully-diluted outstanding share number used in the analysis.

10   As with the DCF, this valuation analysis was performed by the Company's financial advisor,

11   heavily relied on by shareholders, and is expected to represent a clear and accurate state of the

12   Company's finances. Thus, in summarizing the analysis in the Proxy, the Defendants must be

13   completely transparent with the information provided. The failure to include this valuable

14   information renders the summary of the analysis set forth in the Proxy materially incomplete and

15   misleading.

16   41.    The disclosure of the inputs and assumptions underlying the various discount rates

17   utilized in the above two analyses is particularly important here, given the amount of variance in

18   the two ranges. The rate(s) that discount future values to present values has a tremendous impact

19   on the valuation analysis. Since Needham chose to use two significantly different rates in the DCF

20   and the *Present Value of Illustrative Future Stock Prices Analysis*, the individual inputs of those

21   rates must be disclosed so shareholders may determine if such rates were fair.

22   42.    With respect to the Needham's *Selected Transactions* and *IXYS Selected*

23   *Companies* Analyses, the Proxy fails to disclose the individual multiples that Needham calculated

24   for each company and transaction utilized. The omission of these multiples renders the summary

25   of these analyses materially misleading. A fair summary of Companies and Transactions Analyses

26   requires the disclosure of the individual multiples for each company and transaction; merely

27   providing the quartiles that a banker applied is insufficient, as shareholders are unable to assess

28

CLASS ACTION COMPLAINT

whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to alter the analysis to appear more favorable in light of the Merger Consideration.

43. With respect to the Needham's *Littlefuse Selected Companies Analysis*, the Proxy fails to provide any information about the companies selected for comparison. There are no names, there is no mention of the number of companies compared, and there are no individual multiples for the selected companies. The complete omission on any information concerning the companies selected in the *Selected Companies Analysis* renders the analysis materially incomplete and misleading. Given the variable nature of the Merger Consideration, cash and/or Littlefuse stock, the value of Littlefuse, and thus this valuation analysis, is plainly material to IXYS stockholders.

44. With respect to Needham's *Premiums Paid Analysis*, the Proxy fails to disclose the individual premiums used to prepare the comparative analysis. A fair summary of this analysis requires the disclosure of the individual premiums for each transaction observed. Merely providing the quartiles is insufficient, as stockholders are unable to assess whether the banker summarized fairly, or, instead, emphasized only the figures that best present the premia in light of the Merger Consideration, i.e. as low as possible. The omission of this information renders the summary of this analysis set forth in the Proxy materially incomplete and misleading.

45. Finally, with respect to Needham's *Pro Forma Transaction Analysis*, the Proxy omits the following information: (i) the estimated financial results of Littlefuse used in the analysis; (ii) whether there were any synergies for the Proposed Merger beyond 2018, and, if so, their value(s); and (iii) the actual value of the accretion for 2018, whether there was any accretion beyond 2018, and, if so, its value. Again, given the potential for the equity based Merger Consideration, the value of Littlefuse and the pro forma value of the Proposed Transaction is crucial to stockholders in deciding how to vote. Thus, the omission of the above information renders the analysis, and in combination with the lack of any other accurate valuation analyses or projections for Littlefuse, the Proxy as a whole, materially incomplete and misleading.

46. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent

CLASS ACTION COMPLAINT

disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

<u>COUNT I</u>

**(Against all Defendants for Violations of Section 14(a) of the Exchange Act, and Rule 14a-9, 17 C.F.R. 240.14a-9)**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

51.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the valuation analyses performed by Needham in support of its fairness opinion.

16

CLASS ACTION COMPLAINT

52.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

53.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Needham reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Needham as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company.

54.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review Needham's analyses in connection with their receipt of the fairness opinion, question Needham as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or

CLASS ACTION COMPLAINT

1  failing to notice the material omissions in the Proxy upon reviewing it, which they were required

2  to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately

3  involved in the process leading up to the signing of the Merger Agreement and the preparation of

4  the Company's financial projections.

5      56.      IXYS is also deemed negligent as a result of the Individual Defendants' negligence

6  in preparing and reviewing the Proxy.

7      57.      The misrepresentations and omissions in the Proxy are material to Plaintiff and the

8  Class, who will be deprived of their right to cast an informed vote if such misrepresentations and

9  omissions are not corrected prior to the vote on the Proposed Merger.

10     58.      Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

11  of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

12  and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

15     59.      Plaintiff incorporates each and every allegation set forth above as if fully set forth

16  herein.

17     60.      The Individual Defendants acted as controlling persons of IXYS within the

18  meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

19  officers and/or directors of IXYS, and participation in and/or awareness of the Company's

20  operations and/or intimate knowledge of the incomplete and misleading statements contained in

21  the Proxy filed with the SEC, they had the power to influence and control and did influence and

22  control, directly or indirectly, the decision making of the Company, including the content and

23  dissemination of the various statements that Plaintiff contends are materially incomplete and

24  misleading.

25     61.      Each of the Individual Defendants was provided with or had unlimited access to

26  copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

1    shortly after these statements were issued and had the ability to prevent the issuance of the

2    statements or cause the statements to be corrected.

3           62.    In particular, each of the Individual Defendants had direct and supervisory

4    involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

5    the power to control or influence the particular transactions giving rise to the Exchange Act

6    violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous

7    recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were

8    thus directly involved in preparing this document.

9           63.    In addition, as the Proxy sets forth at length, and as described herein, the Individual

10   Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

11   Proxy purports to describe the various issues and information that the Individual Defendants

12   reviewed and considered.  The Individual Defendants participated in drafting and/or gave their

13   input on the content of those descriptions.

14          64.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

15   of the Exchange Act.

16          65.    As set forth above, the Individual Defendants had the ability to exercise control

17   over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

18   their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

19   Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

20   result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

21          66.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

22   of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

23   and irreparable injury that Defendants' actions threaten to inflict.

24                                   **RELIEF REQUESTED**

25          WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class

26   and against the Defendants jointly and severally, as follows:

27

28

---

19

CLASS ACTION COMPLAINT

1       A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff

2 as Class Representative and his counsel as Class Counsel;

3       B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees

4 and all persons acting under, in concert with, or for them, from proceeding with, consummating,

5 or closing the Proposed Merger, unless and until Defendants disclose the material information

6 identified above which has been omitted from the Proxy;

7       C. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms

8 thereof, or granting Plaintiff and the Class rescissory damages;

9       D. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as

10 a result of their wrongdoing;

11       E. Awarding Plaintiff the costs and disbursements of this action, including reasonable

12 attorneys' and expert fees and expenses; and

13       F. Granting such other and further equitable relief as this Court may deem just and proper.

14 **JURY DEMAND**

15       Plaintiff demands a trial by jury.

16

17 DATED: November 3, 2017              Respectfully submitted,

18

19 **OF COUNSEL**                    */s/ David E. Bower*
                                     David E. Bower

20 **MONTEVERDE & ASSOCIATES PC**       David E. Bower SBN 119546

21 Juan E. Monteverde                   **MONTEVERDE & ASSOCIATES PC**
The Empire State Building

22 350 Fifth Avenue, Suite 4405           600 Corporate Pointe, Suite 1170
New York, New York 10118            Culver City, CA 90230

23 Tel: 212-971-1341                     Tel: (213) 446-6652
Fax: 212-202-7880                    Fax: (212) 202-7880

24 Email: jmonteverde@monteverdelaw.com    Email: dbower@monteverdelaw.com

25 *Counsel for Plaintiff*                 *Counsel for Plaintiff*

26

27

28

20

CLASS ACTION COMPLAINT