UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY SANCHEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>IXYS CORPORATION, et al.,<br><br>        Defendants. | Case No. 17-cv-06441-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 48 |

Plaintiff Jerry Sanchez alleges that defendants IXYS Corporation ("IXYS") and various of its officers and directors violated federal securities laws by issuing a proxy prior to IXYS's merger with Littelfuse, Inc. ("Littelfuse") that contained material omissions, rendering it false and misleading.[1] Defendants move to dismiss because the omitted information was already publicly available to Sanchez in the total mix of information or otherwise not material. I agree with defendants and **GRANT** defendants' motion.

## BACKGROUND

Plaintiff Jerry Sanchez was a stockholder of IXYS, a Delaware corporation headquartered in California that was in the technology and semiconductor business. Amended Class Action Complaint ("FAC") [Dkt. No. 42] ¶¶ 19-20; Ex. B ("Proxy") 12. Littelfuse, which produces fuses, semiconductors, polymers, ceramics, relays, and sensors for the electronics, automotive, and

---

[1] The other defendants are Nathan Zommer, the Chairman of the Board, Co-Chief Executive Officer, and Chief Technology Officer of IXYS, Uzi Sasson, the President and Co-Chief Executive Officer of IXYS and a member of the board of directors, and Donald L. Feucht, Samuel Kory, S. Joon Lee, Timothy A. Richardson, James M. Thorburn, and Kenneth D. Wong, directors of IXYS. *Id.* ¶¶ 24-29. In addition, defendant IXYS LLC survived the merger as a subsidiary of Littelfuse and has been designated as the successor by merger to IXYS. *Id.*

industrial markets, approached IXYS to express interest in exploring a strategic combination between the two companies. Proxy 51. After several months of discussions, IXYS hired Needham & Company ("Needham") in June 2017 to serve as IXYS' financial advisory for the potential sale of IXYS. *Id.* 51-52.

After receiving a non-binding offer from Littelfuse, IXYS solicited bids from 13 potential acquirers. Littelfuse eventually submitted a written offer of $23.00 per share. *Id.* 53-54. On August 25, the IXYS board of directors met to review Littelfuse's offer. *Id.* 55. Needham presented its financial analysis of the proposed transaction and delivered an oral opinion that as of that date, and based upon and subject to the assumptions, qualifications, limitations and other matters set forth in its written opinion, the consideration of $23.00 in cash or 0.1265 of a share of Littelfuse common stock per share of IXYS common stock to be received by the holders of IXYS common stock pursuant to the merger agreement was fair to the stockholders. *Id.* After further discussion, the IXYS board of directors unanimously determined that the terms of the merger agreement and merger were fair to, and in the best interests of, IXYS and it stockholders. *Id.* The board declared it advisable for IXYS to enter into the merger agreement. *Id.*

**A. The Proxy**

On December 13, 2017, IXYS filed its proxy statement with the Securities and Exchange Commission ("SEC"). FAC ¶ 45. The proxy recommended that IXYS stockholders vote in favor of the merger. *Id.* The merger consideration was comprised of 50% cash and 50% Littelfuse stock. Proxy 2. The proxy informed stockholders that they could elect to exchange their IXYS shares for either: (1) $23.00 in cash ("cash consideration") or (2) 0.1265 of a share of Littelfuse common stock ("stock consideration). FAC ¶ 2.

The proxy described Needham's opinion that the merger was fair from a financial point of view. Proxy 65-73. Needham conducted various analyses, including a discounted cash flow analysis, a selected company analysis, and a selected transaction analysis. *Id.* Under the selected company analysis, Needham compared certain trading multiples for Littelfuse against other publicly traded companies. *Id.* 72-73. To determine the forward looking multiple for 2018, Needham used analyst projections of Littelfuse's performance. *Id.* 72. Needham stated that their

2

assumptions were "based on discussions with the management of Littelfuse, that the research analyst projections for Littelfuse represent reasonable estimates of the future financial performance of Littelfuse." *Id.* 67. Needham compared Littelfuse multiples to selected companies at the 25th, 50th, and 75th percentile. *Id.* 73.

The proxy did not disclose the particular research analyst projections for Littelfuse presented by Needham to Littelfuse management, which Littelfuse management confirmed represented reasonable estimates of the future financial performance of Littelfuse. FAC ¶ 5. The proxy also did not disclose the individual multiples Needham utilized in its selected companies' analysis. *Id.*

**B. Stockholder Elections**

Holders of 94% of the outstanding IXYS common shares elected to receive the stock consideration. FAC ¶ 3. Holders of approximately 1% of the outstanding IXYS common shares elected to receive the cash consideration. *Id.* Holders of approximately 5% of the outstanding IXYS common shares did not make a valid election or did not deliver a valid election form prior to the election deadline, and each such stockholder was entitled to receive the cash consideration. *Id.*

**C. The Amended Complaint**

Sanchez's Amended Class Action Complaint brings two causes of action. First, he argues that the IXYS violated Section 14(a) of the Securities and Exchange Act of 1934 and SEC Rule 14a-9. FAC ¶ 70-80. Sanchez claims that IXYS' proxy was materially incomplete and misleading due to its failure to disclose: (1) the research analyst projections for Littelfuse presented by Needham to Littelfuse management, which Littelfuse management confirmed represented reasonable estimates of the future financial performance of Littelfuse ("Littelfuse analyst projections") and (2) the individual multiples Needham calculated in connection with its selected companies analysis ("individual multiples). *Id.* ¶ 74. Sanchez contends that the individual defendants, and by extension IXYS, were negligent in preparing and approving the allegedly misleading proxy statement. *Id.* ¶¶ 75-77. Second, Sanchez argues that individual defendants violated Section 20(a) of the Securities and Exchange Act of 1934 because they had the ability to

3

1 exercise control over and did control a person or persons who violated Section 14(a) and Rule 14a-9 as alleged above.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

4

**DISCUSSION**

**I. PLAINTIFF'S SECTION 14(a) AND RULE 14a-9 CLAIMS**

**A. Were the Omitted Facts Material?**

Sanchez focuses on two problems with the proxy: its failure to include the Littelfuse analyst projections as well as the individual multiples. IXYS argues that those alleged problems are immaterial as a matter of law and that no reasonable investor would consider these facts to have "significantly altered the total mix of information available." Mot. 16.

**i. The Littelfuse Analyst Projections**

IXYS contends that the projections were publicly available, that analyst projections are immaterial as a matter of law because public projections are less important than management projections, and that publicly available information has already entered the market and need not be re-included in the Proxy. Mot. 16-17. It is correct.

A misstatement or omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). A plaintiff need not allege a misstatement or omission would have caused a reasonable investor to change her vote. *See id.* Rather, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* "The 'total mix' of information normally includes information that is and has been in the readily available general public domain and facts known or reasonably available to the shareholders." *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004) (internal citation omitted). Proxy statements need not be, and indeed, should not be, an exhaustive catalog of all information that might conceivably be helpful to a shareholder. *See id.* at 448 (explaining that the materiality standard cannot be "unnecessarily low," otherwise management might simply "bury the shareholders in an avalanche of trivial information").

The analyst projections cited by Sanchez were publicly available; he was able to find them on Bloomberg. FAC ¶ 55. Publicly available information cannot be a material omission under federal securities laws. *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991); *In*

5

*re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *6 (N.D. Cal. Dec. 12, 2005); *In re Xerox Corp. Sec. Litig.*, 935 F. Supp. 2d 448, 488 (D. Conn. 2013). "If the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's price and the market will not be misled." *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991) (citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1114 (9th Cir. 1989)) (internal quotation marks omitted). The Littelfuse analyst projections on Bloomberg were already included in the total mix of information considered by shareholders. Their omission may not form the basis of a Section 14(a) claim.

Sanchez argues that under IXYS's logic "information that could be found somewhere within the vast universe of the so-called 'public' domain could never be material because the information is always 'priced in' to a company's stock price." Oppo. 10 (citing *S.E.C. v. Mozilo* and *Miller v. Thane Int'l, Inc.*, No. CV 09-3994-JFW MANX, 2010 WL 3656068, at *9 (C.D. Cal. Sept. 16, 2010); 519 F.3d 879, 887 (9th Cir. 2008)). He cites *Miller* for the proposition that "investors are not generally required to look beyond a given document to discover what is true and what is not." 519 F.3d at 887. In *Miller,* the publicly available information at issue was previous drafts of the proxy. *Id.* The defendants argued that the plaintiffs could have gleaned information by comparing the changes in various drafts of the proxy, rather than being able to simply read the final draft. *Id.* But this case is different—Sanchez is not being asked to independently seek out prior versions of SEC filings or otherwise familiarize himself with the drafting history of a prospectus. *Miller*, 519 F.3d at 887. The Littelfuse analyst projections were easily obtainable and already in the total mix of information that a reasonable investor would look to.

Sanchez also argues that Bloomberg, where he was able to find the Littelfuse analyst projections, should not constitute publicly available information because it is a subscription service. Oppo. 11. Numerous courts have found projections and information from Bloomberg to constitute publicly available data. *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2016 WL 9115980, at *2 (N.D. Cal. May 6, 2016); *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 21 (2d Cir. 2015); *Sasqua Grp., Inc. v. Courtney*, No. CV 10-528 ADS AKT, 2010 WL 3613855, at *4 (E.D.N.Y. Aug. 2, 2010), report and recommendation

6

1    adopted, No. 10-CV-528 ADS ETB, 2010 WL 3702468 (E.D.N.Y. Sept. 7, 2010). I agree with
2    the reasoning in those cases.
3    I find that IXYS's omission of the publicly available Littelfuse analyst projections is
4    immaterial and may not form the basis of a Section 14(a) claim.

### ii. The Individual Multiples

Sanchez, citing *Smith v. Robbins & Myers, Inc.,* argues that shareholders are entitled to the individual multiples used in Needham's analysis so that they might "observe the flaws" in the analyses. Oppo. 13; 969 F. Supp. 2d 850, 872 (S.D. Ohio 2013). In *Smith*, according to the allegations, senior management, without the board's knowledge or authorization, shopped the company and received detailed presentations from two different financial advisors on strategic alternatives. *Smith*, 969 F. Supp. 2d at 857. The only alternatives presented by the first financial advisor were to sell the company or acquire other businesses. *Id.* The second advisor presented four alternatives, along with a discounted cash flow valuation for each one. *Id.* Management then pursued a sale of the company to the exclusion of alternative strategies, repeatedly exceeded the board's directives, and continually failed to keep the board informed. *Id.* The court in *Smith* found that the proxy had materially omitted information regarding the strategic alternatives, including "the extent to which the Board was aware of and disregarded" the second financial advisor's presentation of four strategic alternatives, and "that the Board deliberately disregarded its duty to analyze the value of the strategic alternatives in comparison to the [recommended merger] consideration." *Id.* at 869.

But this is not a case like *Smith*, since no serious misconduct or omission by the board has been alleged. Sanchez and other shareholders were provided with a fair summary of the substantive work performed by Needham, upon whose advice the IXYS board relied in reaching their recommendation to approve of the merger. The proxy described Needham's selected company analysis, the inputs used in the analysis, and the 25th, 50th, and 75th percentile of the multiples of the selected companies. Proxy 72-73.

Sanchez contends that if the individual multiples had been disclosed, stockholders would have realized that Littelfuse was overvalued because its pricing multiples meaningfully exceeded

virtually all of the multiples for the selected companies. FAC ¶ 14. He argues that if stockholders knew about this, they would have either voted against the merger, believing that IXYS would grow faster without Littelfuse, or demanded increased merger consideration. *Id.* ¶ 47, 50. However, the information provided in Needham's selected company analysis was already sufficient to show that Littelfuse was potentially overvalued. Proxy 73. The proxy showed that Littelfuse's multiples greatly exceeded those of the selected companies; this information was sufficient for Sanchez himself determine that Littelfuse was overvalued, as his counsel argued at the hearing. *Id.* Providing shareholders with individual multiples would not have changed the total mix of information available to the shareholders and would have been duplicative. The proxy adequately informed shareholders that Littelfuse might be overvalued. Nevertheless, the shareholders voted overwhelmingly to approve the merger.

In the context of disclosure only settlements, Delaware's Court of Chancery has adopted a "plainly material" standard for supplemental disclosures. *In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 898 (Del. Ch. 2016). The court defined "plainly material" as supplemental information that would not be a close call in terms of materiality under Delaware law, which uses the standard of materiality applied under the federal securities laws. *Id.* at 899. *Trulia* has been followed by the Seventh Circuit and treated favorably by several federal district courts. *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 725 (7th Cir. 2016) (*see e.g. Rosenfeld v. Time Inc.*, No. 17CV9886 (DLC), 2018 WL 4177938, at *1 (S.D.N.Y. Aug. 30, 2018); *In re CytRx Corp. Stockholder Derivative Litig.*, 2016 WL 6571265, at *5 (C.D. Cal. Aug. 17, 2016)). I adopt the "plainly material" standard here.

A number of courts have found the omission of inputs used by financial analysts to be unhelpful and immaterial to shareholders. *Trulia*, 129 A.3d at 905-06; *Greenthal v. Joyce*, 2016 WL 362312, at *6 (S.D. Tex. Jan. 29, 2016), *Bushansky v. Remy Int'l, Inc.*, 262 F. Supp. 3d 742, 751–52 (S.D. Ind. 2017). "Shareholders are merely entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice their board relied in reaching their recommendation." *Greenthal*, 2016 WL 362312, at *6.

This case is similar to *Trulia*, *Greenthal,* and *Bushansky.* I agree with IXYS that the

individual multiples would be immaterial to a reasonable shareholder, would not add to the total mix of information available, and may not form the basis of a Section 14(a) claim or Rule 14a-9 claim. IXYS motion to dismiss Sanchez's claim under Section 14(a) or Rule 14a-9 is **GRANTED.** IXYS's arguments regarding negligence and causation are moot and need not be considered.

## II. PLAINTIFF'S SECTION 20(a) CLAIMS

"To establish controlling person liability [under Section 20(a)], the plaintiff must show that a primary violation was committed and that the defendant directly or indirectly controlled the violator." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996) (citation and internal quotation marks omitted). Since Sanchez has not adequately pleaded a violation of Section 14(a), his claim under Section 20(a) must also be dismissed. *See Oregon Pub. Emps. Ret. Fund*, 774 F.3d 598, 610 (9th Cir. 2014) (holding that plaintiffs cannot establish control person liability under section 20(a) "because they have not adequately alleged violations of section 10(b) and Rule 10b-5.").

IXYS motion to dismiss Sanchez's claim for Section 20(a) is **GRANTED.**

## CONCLUSION

Sanchez has failed to state a claim under Section 14(a) or Rule 14a-9 because the proxy omissions are immaterial. As there is no primary violation, Sanchez has failed to state a claim under Section 20(a).

IXYS's motion to dismiss is **GRANTED.** Sanchez may have leave to amend within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: October 2, 2018

William H. Orrick
United States District Judge